NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
888 DIGITAL, INC. ,                      :
                                         :
         Plaintiff,                      :
                                         :     Civil Action No. 06-5512 (JAG)
              v.                         :
                                         :     **OPINION**
MOON SONG a/k/a MIKE SONG d/b/a          :
BAY ELECTRON CO., and UNION              :
BANK OF CALIFORNIA, N.A.,                :
                                         :
         Defendants.                     :
_____:

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on Plaintiff 888 Digital, Inc.'s ("Plaintiff" or "Digital") amended motion for entry of default judgment against Defendant Moon Song a/k/a Mike Song d/b/a Bay Electron Co. ("Defendant" or "Song"), pursuant to FED R. CIV. P. 55(b). Plaintiff seeks money damages stemming from an alleged breach of contract for goods.

**I. FACTS**

Digital is a wholesale distributor of digital cameras, memory, and car audio equipment. (Compl. ¶ 6.) Song is a customer of Digital. (Id. ¶ 7.) Between August 22, 2006 and September 15, 2006, Song purchased $80,410.08 worth of cameras and equipment from Digital. (Affidavit of Albert Palacci ("Palacci Aff.") dated September 17, 2000, at ¶ 3.) The terms of the sale required Song to reimburse Digital for the purchased items within thirty days. (Compl. ¶ 4.)

Song executed and delivered a guaranty of payment dated April 26, 2006, as collateral

security for the items purchased.  (Id. ¶ 8.)  As additional collateral security, Song posted a Payment Bond Certificate with the Union Bank of California ("Union Bank")[1] in the amount of $50,000, naming Digital as the payee.  (Id. ¶ 9.)

Digital alleges that, despite its demand for payment, Song failed to make payments pursuant to the terms of the sale.  (Id. ¶ 13.)  Additionally, Digital alleges that Song failed to sign the Payment Bond Certificate so that it could be cashed.  (Id. ¶ 11.)  Digital now requests damages, including pre-judgment interest and the costs of suit, as a result of Defendant's breach of contract.  (Id. ¶ 16.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) governs the entry of default judgment. The Rule states:

> In all other cases, the party must apply for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing.

FED. R. CIV. P. 55(b)(2).  "The Federal Rules of Civil Procedure commit the entry of a default judgment against a party to the sound discretion of the trial court." F.T.C. v. Packers Brand Meats, Inc., 562 F.2d 9, 11 (8th Cir. 1977).

"Default establishes the defaulting party's liability for the well-pleaded allegations of the

---

[1] Union Bank was originally a co-defendant in the suit as a stake holder. (See Compl. ¶¶ 21-24.)  Union Bank was later dismissed from the case when it released to Digital the $50,000 Payment Bond Certificate that was posted by Song. (Certification of Kevin P. Claffey, ¶ 4 dated July 30, 2007 (Docket Entry No. 5.))

complaint." United States v. Gant, 268 F. Supp. 2d 29, 32 (D.D.C. 2003) (citing Brock v. Unique Racquetball & Health Clubs, Inc., 786 F.2d 61, 65 (2d Cir. 1986)). Default does not establish liability for the amount of damages claimed by the plaintiff. Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

The district court has considerable latitude in determining the amount of damages. Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993). In determining the amount, the district court may conduct a hearing. FED. R. CIV. P. 55(b)(2). The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997). "It is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." Pope v. United States, 323 U.S. 1, 65 (1944).

### III. JURISDICTION

Before default judgment may be entered against a party that has not filed responsive pleadings, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986).

**A.      Subject Matter Jurisdiction**

This Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1332, since Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000. Specifically, Digital is a corporation organized and existing under the laws of New Jersey, with its principal place of business in Linden, New Jersey. (Compl. ¶ 2.) According to the Complaint, Song maintains an office in San Francisco, California. (Id. ¶ 3.) Further, Song is a citizen of the State of California, and maintains a residence in California. (Executed Summons for Moon Song dated Jan. 3, 2007 (Docket Entry No. 3).) The diversity of citizenship and the amount in controversy permit this Court to exercise subject matter jurisdiction over this matter.

**B.     Personal Jurisdiction**

A federal court sitting in diversity must conduct a two-step analysis to ascertain whether personal jurisdiction exists. First, the court must look to the forum state's long-arm statute to determine if personal jurisdiction is permitted over the defendant. Second, the court must determine whether the exercise of jurisdiction violates the Due Process Clause of the Fourteenth Amendment. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998); Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co., 75 F.3d 147, 150 (3d Cir. 1996).

In this forum, the personal jurisdiction inquiry is collapsed into a single step because New Jersey's long arm statute permits the exercise of personal jurisdiction to the fullest limits of due process, as defined under the Constitution of the United States. Federal law defines the parameters of this Court's in personam jurisdiction. IMO, 155 F.3d at 259. The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum

4

State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235 (1958)).  It is the burden of the plaintiff to prove that the defendant has purposefully availed itself of the forum state.  Burke v. Quartey, 969 F. Supp. 921, 924 (D.N.J. 1997).

To prove that a defendant has purposefully availed itself of the forum state, a plaintiff may rely upon a defendant's specific contacts with the forum state.  The burden to produce actual evidence of the defendant's contacts with the forum state rests on the plaintiff.  Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).  Personal jurisdiction pursuant to such contacts is known as specific jurisdiction.  Specific jurisdiction is invoked when a claim is related to or arises of out the defendant's contacts with the forum.  Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 416 (1984); Dollar Sav. Bank v. First Sec. Bank of Utah, 746 F.2d 208, 211 (3d Cir. 1984).

A court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  What constitutes minimum contacts varies with the "quality and nature of defendant's activity." Hanson, 357 U.S. at 253.  In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum, and the litigation." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984).  There must be at least "a single deliberate contact" with the forum state that relates to the cause of action.  United States Golf Ass'n v. United States Amateur Golf Ass'n, 690 F. Supp. 317, 320 (D.N.J. 1988).  The unilateral acts of the plaintiff, however, will not amount to minimum contacts.  Helicopteros Nacionales de Colombia, 466 U.S.

at 414; Hansen, 257 U.S. at 253.  Assuming minimum contacts have been established, a court must inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  Burger King Co., 471 U.S. at 476 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)); see also Pennzoil Prod. Co. v. Colelli & Assoc. Inc., 149 F.3d 197, 201 (3d Cir. 1998).

For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state.  World-Wide Volkswagen Corp., 444 U.S. at 292 (1980).  To determine reasonableness, a court considers the following factors: a) the burden on the defendant; b) the forum state's interest in adjudicating the dispute; c) the plaintiff's interest in obtaining convenient and effective relief; d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and e) the shared interest of the several States in furthering substantive social policies.  Id.  Only in "rare cases [do the] minimum requirements inherent in the concept of 'fair play and substantial justice' . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities."  Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County, 480 U.S. 102, 116 (1987) (citing Burger King Co., 471 U.S. at 462).

If the plaintiff cannot establish specific jurisdiction, a court may exercise general jurisdiction over the defendant if the defendant has maintained "continuous and systematic" contacts with the forum state.  Helicopteros Nacionales de Colombia, 466 U.S. at 416.  To establish general jurisdiction, the plaintiff "must show significantly more than mere minimum contacts" with the forum state.  Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987).  Moreover, the facts required to establish general jurisdiction must

be "extensive and persuasive." Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982).

In the instant case, Song's contacts with New Jersey establish specific jurisdiction. "Specific jurisdiction is established when a nonresident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from, or is related to, those activities. In determining jurisdiction for a breach of contract, the district court must consider the totality of the circumstances." Telcordia Tech. Inc. v. Telkom SA Ltd., 458 F.3d 172, 177 (3d Cir. 2006) (internal citations omitted). Song was a regular customer of Digital, a New Jersey corporation, and, as alleged in the Complaint, purchased $80,410.08 worth of equipment from Digital between August 22, 2006 and September 15, 2006. (Compl. ¶ 12.) This cause of action arises from, and is directly related to, Song's business contacts with Digital in New Jersey.

The assertion of personal jurisdiction over Defendant also comports with fair play and substantial justice because it is reasonable to require Defendant to defend this action in New Jersey. See World-Wide Volkswagen Corp., 444 U.S. at 292. Plaintiff's claim arose directly from Defendant's contacts with New Jersey. Although there will likely be some burden on Defendant to adjudicate this cause of action in New Jersey, that burden is outweighed by Plaintiff's interest in obtaining effective relief and New Jersey's interest in adjudicating the issue. See McGee v. International Life Ins. Co., 355 U.S. 220 (1957) (noting that states have strong interests in protecting their citizens). These factors satisfy the "minimum requirements inherent in the concept of 'fair play and substantial justice.'" See Asahi, 480 U.S. at 116.

## IV. ANALYSIS

**A.  Default Judgment**

Defendant has failed to appear, or otherwise plead, in response to the Complaint, which was filed on November 16, 2006 and served on Defendant on January 3, 2007. (See Executed Summons for Moon Song dated Jan. 3, 2007 (Docket Entry No. 3).) Defendant failed to respond to the instant motion, despite having been served with the motion on May 4, 2008. This Court finds that default judgment is appropriate, under FED. R. CIV. P. 55 (b)(2), on all counts of the Complaint.

**B.  Damages**

Plaintiff requests the following damages: $30,410.08 in damages;[2] pre-judgment interest from December 15, 2006 until the date of the entry of judgment, at $3.33 per day;[3] and costs as set forth in the Bill of Costs, totaling $540.00.[4] However, Plaintiff has not provided copies of the unpaid invoices in support of its request for damages.[5] Furthermore, Plaintiff has not provided any supporting documentation showing its entitlement to pre-judgment interest at that rate.

---

[2] Although the original amount in controversy was $80,410.08, Plaintiff reduced this amount to $30,410.08 based on its receipt of funds for the $50,000 Payment Bond Certificate from Union Bank. (See Palacci Aff. ¶ 10.)

[3] The pre-judgment interest is calculated based on "an annual rate of 4.00%." (Palacci Aff. ¶ 10.)

[4] The fees that were set forth in the Bill of Costs include: 1) $190, for the cost of serving the Summons to Song; and 2) $350, for filing fees. (Bill of Costs dated Sept. 18, 2007 (Docket Entry No. 13.))

[5] Although Plaintiff states that copies of the invoices are "attached to the verified complaint as 'Exhibit 3'" (Palacci Aff. 3), such documents were not attached to the Complaint filed with this Court on November 16, 2006 (Docket Entry No. 1).

Therefore, this Court will reserve judgment on these issues.

## V. **CONCLUSION**

For the reasons set forth above, this Court shall grant Plaintiff's motion for default judgment. This Court shall reserve judgment on the issue of damages.

Date: July 16, 2008

                                            S/Joseph A. Greenaway, Jr.
                                            JOSEPH A. GREENAWAY, JR., U.S.D.J.